(24 Misc. Rep. 462.)

### GROBE v. ERIE COUNTY MUT. INS. CO.

(Supreme Court, Special Term, Cattaraugus County. August 25, 1898.)

1. MUTUAL FIRE INSURANCE COMPANIES—RIGHTS OF MEMBERS.
   A policy holder in a mutual fire insurance company is not a co-partner, and hence is not entitled to a pro rata share of the assets of the corporation.

2. SAME—REORGANIZATION—TRANSFER OF ASSETS TO NEW COMPANY.
   Laws 1896, c. 850, permits mutual fire insurance companies to be converted into stock corporations with the consent of the superintendent of insurance, and on a three-fourths vote of the president and directors, and provides that on the performance of prescribed conditions precedent to the change the superintendent shall certify to that effect, and that the corporation is "reorganized" as an insurance stock corporation, whereupon the law applicable to such corporations shall become applicable to it. *Held*, that the statute by implication transfers the assets of the old company to the new.

3. CONSTITUTIONAL LAW—DUE PROCESS OF LAW.
   Laws 1896, c. 850, permitting mutual fire insurance corporations to be converted into stock corporations with the consent of the superintendent of insurance, and on a three-fourths vote of the president and directors, does not authorize policy holders in a mutual company to be deprived of property without their assent.

Suit by John Grobe against the Erie County Mutual Insurance Company to restrain the trustees of defendant from changing it to a stock corporation. Demurrer to the complaint sustained.

A. J. Robertson and Judge Brundage, for plaintiff.
John Cunneen, for defendant.

SPRING, J. The defendant insurance company was organized in 1874 as a mutual insurance corporation, and ever since has carried

on a very successful business.   The mode of insurance, as spread in its constitution, is conformable to the requirements of the statute applicable to such companies.   Each person designing to avail himself of the insurance provided by its charter paid as cash premium a certain sum, fixed by the board of trustees, and as further collateral security deposited his promissory note for such sum as said trustee determined,—restricted, however, to five times the amount of such cash payment; and payments were exacted on the note at the instance of the trustees to meet the ordinary exigencies of the business, and upon the expiration of the policy the note was surrendered to the insured.   No provision is made for any distribution of profits among the persons insured.   The scheme is to secure insurance at substantially its actual cost.   The business is managed by a board of trustees, who are elected annually by the persons insured, so that to that extent every person holding a policy is a member of the corporation, and is entitled to a voice in the selection of its management.   By chapter 850 of the Laws of 1896 it is permitted a mutual fire insurance corporation having surplus assets adequate to reinsure all its outstanding risks to convert said company into a stock corporation.   The prerequisite to this change is the consent of the superintendent of insurance and a three-fourths vote of the president and directors of the corporation.   The power to change existed under the laws then in force. Only the consent of two-thirds of the members present at a regular meeting, or a special meeting called therefor, was essential to become a joint-stock corporation; or, in case no meeting was held, the written consent of two-thirds of the members, supplemented by the consent of three-fourths of the directors, was a condition precedent to such change; that is, the radical change made by the law of 1896 did away with the necessity of the consent of the members of the corporation, but vested the power wholly in the board of trustees, providing the preliminary consent of the superintendent of insurance was obtained. However unwise the enactment may be in thus depriving the members of any voice in the transfer, I cannot see that it is an infraction of any constitutional provision.   Safeguards are embodied in the statute providing for notice to all the members of the corporation, and giving them the preference in the purchase of stock in the reorganized corporation, and an accounting and investigation are taken at the instance of the superintendent of isurance after the capital stock has all been subscribed for and paid in, and, if the proceedings have been carried through conformably to the statute, that official so certifies, and the reorganization is complete.   The plaintiff in this action held a policy with defendant, and brings his suit in equity, alleging that the trustees intend changing to a stock corporation, and seeks to restrain them from so doing.

There are many averments in the complaint that have very little to do with the substantive cause of action, averments evidently incorporated in the complaint arising out of a desire to attack and impugn the motives of the trustees.   For instance, the complaint alleges that prior to 1895 voting by proxy was prohibited by the constitution of the corporation, and that year, at a regular meeting, this inhibition was removed.   There is no allegation charging any undue action on the

part of the trustees in making this change, nor are they charged with fraud in regard to it. It seems to have been done at a regular meeting, and in a regular way, so that, even though the amendment may have been injudicious, it involves no criticism against the trustees.

Again, it is charged that a large number of the members became "distrustful of the management," and made a vigorous effort at the last annual election to oust the trustees, but they secured their retention by proxies from the various members. This accusation, inasmuch as no unfair or fraudulent conduct is charged, is a trifle amusing. Each proxy represented a member, and as that was the mode of voting prescribed by the organic law of the company any one could be energetic in procuring powers of attorney from his associate members, and the fact that one man was more successful, possibly, than his rival in the race, should not subject him to obloquy. About all there is in that allegation is that two parties were striving for the ascendancy, and the defeated party, like an unfortunate candidate for political preferment, felt sore over its defeat, and has come to regard the election of its competitor as a public calamity.

Again, the complaint alleges that the act permitting the change from a mutual to a stock corporation without the consent of the members was enacted through the influence of these trustees. No averment of any improper interference on their part is embodied in the complaint, so that this charge has little of merit in it so far as the pleading shows. The further allegations relate to the excellent financial status of the company, and the various acts showing the intention of the trustees to become a stock corporation in pursuance of the legislative enactment mentioned. After all, the pith of the controversy is as to the right of the trustees to make this change without the consent of the members. The argument of the plaintiff is that every policy holder, by virtue of his membership, is a co-partner, and entitled to a pro rata share in the assets of the corporation. I do not so interpret his relations to the corporation. If that were so, the death of a policy holder would ipso facto dissolve the co-partnership, and each member would be entitled to an accounting whenever the death of a policy holder occurred, or whenever a policy expired. During the life of his policy he has a voting membership, which is essential to continue the organization, and to insure the selection of managers. The voting power had to be vested somewhere, and by the constitution and the scheme of insurance it is vested in the policy holders, the rights of each of whom terminate upon the surrender of his note. The rights of members of mutual fire insurance companies have several times been the subject of judicial construction in this state. In Cohen v. Insurance Co., 50 N. Y. 610, which is the leading case on this subject, Judge Allen uses the following language at page 624:

"But whatever analogies there may be between mutual companies and ordinary partnerships, and the relation of the members of the two organizations, an incorporated company, although organized upon the mutual principle, is in no proper sense a partnership. The defendant is a body politic and corporate, capable of contracting and of suing and being sued, and the relation between the plaintiff and the corporation is that of insured and insurer. * * * Other and incidental rights are secured to the plaintiff as a member of the company, one of the corporators; but this does not

make the members partners as between themselves, or affect the express contract of the corporation."

Again, in Uhlman v. Insurance Co., 109 N. Y. 421, 17 N. E. 363, citing the above case as authority, Judge Peckham says, at page 429, 109 N. Y., and page 365, 17 N. E.:

"It has been held that the holder of a policy of insurance, even in a mutual company, was in no sense a partner of the corporation which issued the policy, and that the relation between the policy holder and the company was one of contract, measured by the terms of the policy."

See, also, People v. Security Life Ins. Co., 78 N. Y. 114.

I am aware that in Lawrence v. Nelson, 21 N. Y. 158, a contrary doctrine was held, but in that case the scheme of insurance provided for making annual statements, and, if the business showed profits, a certificate was delivered to each policy holder, showing the amount to which he was entitled as profits, only it was stated in the certificate such sum should be retained by the company to meet any losses that might be incurred. The very charter of the company provided for this distribution, and it was essential to construe their relation as that of a partnership. In the case of Mygett v. Insurance Co., Id. 52, the act under which the company was incorporated also provided for a participation in the profits. It seems to me, however, the question involved in this action does not depend for its solution upon this relationship of plaintiff to the company. Insurance companies, at least since the creation of the insurance department in 1859, have been under the dominion largely of that department and of the legislature of the state. Their manner of organization, their method of doing business, and, in certain contingencies, their very life, are within the control of the legislature, or its creature, the insurance department; and enactments in execution of these rights have from time to time been made. The object is primarily to insure safety to the policy holder in effecting his insurance. When this defendant company was organized, in 1874, every member or incorporator knew of the right of the legislature to control the management of the company, and to enact further legislation to make effective its power to conserve and guard the rights of policy holders. The right to organize an insurance company is a public franchise, and the plaintiff and the early incorporators knew this fact, and they must expect to conduct their business subject to whatever restrictive enactments the legislature should see fit to impose.

The amendment in the law of 1896, permitting the change to a stock corporation to be made dependent only upon the action of the trustees, was one of the rights inherent in the power of the legislature to control and regulate the affairs of these companies. The trustees were the chosen representatives of the members of the corporation, and the legislature did not transcend its power in committing the right of transfer to the trustees, instead of to the individual members. The requirement that $200,000 in cash must be subscribed and contributed to its assets as a condition precedent to the change embodies nothing new in the substance. That requirement, and the manner of perfecting the change to insure the rights of the policy holders, and permit them to take stock in

the new corporation, are either parts of the old law or essential to the new corporation. While section 125 of the general insurance law, then in force, contained no restriction limiting the formation of such companies to a minimum capital of $200,000, yet such was fairly the scope of the law as provided in section 124. The designation of a specific capital was probably to overcome the elimination of the premium notes of the old company. If the action depended upon a regular meeting, those in the minority at such meeting would be remediless to prevent the change, however unwise they might regard it. That is, the permission to become a stock corporation was ingrafted on the law by the legislature. Its right to do that is unquestioned. Ancillary to this is the power to prescribe the manner of effecting the change. The legislature fulfills its obligation in this regard. It requires the subscription of $200,000 to the capital stock of the new corporation to be divided among the members of the old company "in proportion to the amount of cash premiums paid in by such member on unexpired risks in force on the day of such annual or special meeting," and, if any stock is not taken by the members of the mutual company, the same shall be sold by the trustees. All of these are safeguards to insure to the members of the mutual company the first right to take stock. If, as contended by the counsel for the plaintiff, each policy holder is a co-partner, having a fixed, ascertainable property interest in the assets of the company, and any change to a stock corporation must be based upon the assent of the members themselves, then any enactment authorizing such change would be a dead letter,—a perfunctory act. The assent of every member never could be obtained, in such an army of policy holders; and yet the smallest owner cannot be deprived of his property rights by the legislature, even though every associate member consents to the transfer. The same reason urged by counsel for the unconstitutionality of the law of 1896 investing the right to determine to become a stock corporation with the trustees is of equal force in favor of any recalcitrant member, who in a regular or special meeting should raise his solitary protest against such a change. If the transfer by the trustees is a deprivation of property rights without the assent of the owner, so is the transfer against the vote of any member a deprivation of his rights without his consent. If, however, the authority of the legislature is supreme to prescribe the manner in which a mutual corporation may change to a stock corporation, then, whether a member be a co-partner or not, he must conform to the mode provided by the legislature. Therefore, as I view the case, it is unimportant what the relation of plaintiff is to the company. The legislature, in enacting chapter 850 of the Laws of 1896, was within its power to provide what was necessary to enable a mutual company to become a stock corporation, and the members must comply with those directions. The only charge embodied in the complaint is that the trustees are adhering strictly to the law, not seeking to violate its provisions, and the litigation therefore narrows down to the effect to be given to this statute.

I cannot subscribe to the argument of plaintiff's counsel that chapter 850 of the Laws of 1896 fails to provide for a transfer of the assets of the old company to the new. That is the marrow of the statute. The whole scheme of the law, as evinced in section 125, both before and since the amendment of 1896, was to extinguish the mutual company upon the completion of the stock corporation. The assent of the superintendent of insurance, the vote of three-fourths of the directors, the priority given to the members in the taking of stock, the examination by the superintendent after the capital stock has all been paid for, and his certificate thereof, are all steps preceding the extinction of the mutual company by the creation of the new. The old company is "reorganized." The transformation from the chrysalis to the winged state is no more complete than from the mutual to the stock corporation. The reorganized company assumes the payment of the existing policies, and receives the premiums. If this is not the scope of the statute, then it is shorn of its substance.

The complaint is not framed in fraud. If pertinent allegations changing the scope of the action to one of fraud had been made, a vastly different question would be presented.

There is nothing in the averments of the complaint making an accounting necessary, and it is not sought to interfere with the trustees in the prosecution of the business of the company, so section 56 of the general insurance law does not seem to me to be applicable to the case, as argued by defendant's counsel.

The demurrer is sustained, with costs.