# POLK v. MUTUAL RESERVE FUND LIFE ASSOCIATION OF NEW YORK.

## CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 45.   Argued November 11, 1907.—Decided December 2, 1907.

Where there is a reserved power in the legislature to alter, amend or repeal charters, a law permitting mutual life associations to reincorporate as regular life insurance companies is not unconstitutional as impairing the obligation of the contracts existing between such associations and their policyholders, or as depriving such policyholders of their property without due process of law. *Wright* v. *Minnesota Mutual Life Insurance Co.*, 193 U. S. 657.

The legislative power to alter, amend and repeal charters is equally effectual whether it be reserved in the original act of incorporation, the articles of association under a general law, or in the constitution of the State in force when the incorporation under a general law is made.

Under the power to alter, amend and repeal charters reserved in the Constitution of 1846 of New York, Chapter 722 of the Laws of 1901 does not impair the obligation of contracts existing between mutual life associations and their policyholders, nor in this case did the reincorporation of such an association as a regular life insurance company deprive its policyholders of their property without due process of law.

In this case the Circuit Court of Appeals for the Second Circuit certified certain questions of law upon which it desired instruction. Such part of the statement accompanying the questions as we find material and the questions themselves follow:

"The above-named appellants filed their bill in equity in the United States Circuit Court for the Southern District of New York, praying for the appointment of a receiver of both defendants, the winding up of both defendants, an accounting to ascertain the interests of complainants and all other policyholders of Mutual Reserve Fund Life Association in the assets of Mutual Reserve Life Insurance Company and the marshaling

and distribution of said assets. A final decree was entered by the Circuit Court sustaining a demurrer of the defendant to the amended bill of complaint and dismissing the bill. From that decree the complainants have appealed to this court.

"The amended bill of complaint alleges the existence of the following facts:

"The complainants became members and policyholders of the said association respectively on various dates from 1886 to 1900. The policy of each complainant is made a part of the bill and also the application for insurance of two of the complainants. The material provisions of the policies and applications are hereto annexed as Exhibits 1 and 2. Said association became a corporation organized and existing under the laws of the State of New York. It was originally organized in 1881 under the corporate name of Mutual Reserve Fund Life Association of New York, under Chapter 267, Laws of 1875, entitled 'An Act for the incorporation of societies and clubs for certain lawful purposes.' The original certificate of incorporation stated the objects and business of the company to be 'The mutual benefit of ourselves and all others who may become members of the society by providing benefits for families and others dependent upon such members by means of voluntary contributions to meet exigencies occurring from time to time, and to provide a fund for the common and exclusive benefit of all members.' In 1883 the association reincorporated under Chapter 175, Laws of 1883, entitled 'An Act to provide for the incorporation and regulation of coöperative or assessment life and casualty insurance associations and societies.' Its amended charter or certificate of incorporation, filed in 1883, after reciting the desire of the corporation to reincorporate under said act of 1883, provided:

" 'First. We do hereby express our intention to form an organization for the transaction of life insurance upon the coöperative or assessment plan.

\*       \*       \*       \*       \*       \*       \*       \*

" 'Fourth. The mode and manner in which the corporate

powers granted are to be exercised are by issuing certificate of membership, policy or other evidence of interest to, and promise an agreement with its members, whereby upon the decease of a member, money or other benefit, charity, relief, or aid is to be paid, provided or rendered by said corporation or association to the legal representative of such member, or to the beneficiary designated by such member, which money, benefit, charity, relief or aid are derived from voluntary donations, or from admission fees, dues and assessments, or some of them, collected or to be collected from the members thereof, or members of a class therein and interest and accretions thereon; or rebates from amounts payable to beneficiaries, or heirs, and wherein the paying, providing or rendering of such money or other benefit, charity, relief or aid is conditioned upon the same being realized in the manner aforesaid; and wherein the money or other benefit, charity, relief or aid so realized is applied to the uses and purposes of said corporation or association, and the expenses of the management and prosecution of its said business.'

"The existence and corporate powers of the association under the name of Mutual Reserve Fund Life Association of New York continued from that time unchanged until April 17th, 1902. On that date a declaration and amended charter of the said association was filed under and pursuant to the provisions of Chapter 722, Laws of 1901, which act was an amendment of Section 52 of Chapter 690, Laws of 1892, known as the Insurance Law of the State of New York. This amended charter of 1902 was adopted and filed pursuant to a resolution of the board of directors of the said association, adopted by more than a majority of said board. The declaration and amended charter were duly certified by the Attorney-General of the State to be in accordance with the requirements of law, and the State Superintendent of Insurance issued his certificate of the filing of such declaration and amended charter and consented to the transaction of the business of insurance by the said Mutual Reserve Fund Life Insurance Company as

in said amended charter provided. The material provisions of said declaration and amended charter are as follows:

" 'This is to certify that the Mutual Reserve Fund Life Association, a corporation originally organized under and by virtue of Chapter 267 of the Laws of 1875, and reincorporated and transacting business under Chapter 175 of the Laws of 1883 of the State of New York, and the laws amendatory thereof and supplementary thereto, has duly accepted the provisions of the act of the legislature of the State of New York, being Chapter 690 of the Laws of 1892, known as "The Insurance Law," and the amendments thereto, and in conformity with the same has duly adopted the following amended charter:

" 'Article I.

" 'The name of the corporation shall be "Mutual Reserve Life Insurance Company."

\*      \*      \*      \*      \*      \*      \*      \*

" 'Article III.

" 'The business of the company shall be insurance upon the lives or the health of persons, and all and every insurance appertaining thereto, the making of endowments, and the granting, purchasing and dispensing of annuities, such kind of insurance being authorized under subdivision one of section 70 of "The Insurance Law."

" 'Article IV.

\*      \*      \*      \*      \*      \*      \*      \*

" 'SEC. 4. The present by-laws of the corporation, which form part of its contracts with its members, shall continue to be the by-laws of the company unless or until the same shall be revised or amended in the manner therein provided.

\*      \*      \*      \*      \*      \*      \*      \*

" 'Article VI.

" 'SEC. 1. The company shall have no capital stock, but shall be a mutual company.

\*      \*      \*      \*      \*      \*      \*      \*

" 'Article VIII.

" 'The company shall be entitled to have and enjoy all the

rights, privileges, and provisions of existing laws which might be included in the charter and enjoyed by it, if it were originally incorporated under "The Insurance Law" of this State.'

"The consent of the policyholders to this amendment of the defendant's charter was not obtained, and no meeting of policyholders was called for that purpose. The complainants had no notice of said amendment until June 2nd, 1902, on which date complainants received the following notice:

"'*Note Change of Name.*

"'Make checks and money orders payable to

"'Mutual Reserve Life Insurance Company.

"'On April 17, 1902, Mutual Reserve Fund Life Association reincorporated as a mutual level premium company, under the title of *Mutual Reserve Life Insurance Company.* Attention is called to this change of name and to the accompanying report of the recent examination of the corporation by the Superintendent of Insurance of the State of New York, which shows a surplus over liabilities of $466,885.48.

"'This reincorporation, while insuring the stability of the company, makes no change in your policy.

"'CHARLES W. CAMP, *Secretary.*'

"The bill suggests no irregularity or defect in the procedure by which the amendment of the charter in 1902 was effected, other than that the consent of the policyholders was not obtained.

"It is further alleged that said company was organized about the 17th of April, 1902, by the then officers and directors of the respondent Mutual Reserve Fund Life Association, without authority from and without the knowledge or consent of complainants or the other members and policyholders of said association and without corporate action by said members and policyholders, and that complainants and the other members of the association were not advised of the organization of the company until on or about June 2, 1902, when they received a printed slip notifying them that the said association

had reincorporated under the name 'Mutual Reserve Life Insurance Company.'

"The amended bill then alleges that at the time of the organization of said company the association was, and for a considerable time had been insolvent, its liabilities being in excess of the value of its assets by a large amount, and that the insolvency of the association was known to the officers and directors thereof, and that the officers and directors, headed by Frederick A. Burnham, president of the association, well knowing the insolvency of the association, devised the scheme for the incorporation of the respondent Mutual Reserve Life Insurance Company and procured legislation intended to authorize the same, with the object and for the purpose of secretly and fraudulently 'depriving complainants and the other members and policyholders of respondent association of their membership rights and privileges and of abridging the same, and that by their said course in the premises said officers and directors sought and intended to defraud the complainants and the members and policyholders of said association generally and sought and intended to deprive them of their rights as members and policyholders or to cause a forfeiture of the same.

"Complainants in their amended bill allege 'that said law, Chapter 722 of the Laws of New York of 1901, if its effect and meaning be such as to authorize the pretended reorganization and reincorporation of the respondent association by the officers and directors thereof without due notice to and without the knowledge and consent of complainants or any of the members and policyholders of respondent association . . . is in contravention and violation of section 10, Article I, of the Constitution of the United States, which prohibits any State from enacting a law 'impairing the obligation of contracts,' and complainants invoke and rely upon said provision of the Constitution of the United States and say that under said provision of the Constitution of the United States said law is unconstitutional, invalid and void.' And 'complainants fur-

ther allege that said law of the State of New York, if given the construction, meaning and effect aforesaid, is in contravention and violation of those provisions of the Constitution of the United States and of the State of New York, which provide that "no person shall be deprived of his property without due process of law," in this, that they deprive the complainants and the other members and policyholders of respondent association of their vested rights and privileges and of their property rights under their contracts and agreements with respondent association without due process of law, and complainants, as citizens and residents of the State of Tennessee and nonresidents of the State of New York, invoke the provisions of Article XIV of the Amendments to the Constitution of the United States, and, upon advice of counsel, allege and charge that said law of the State of New York, if given the force, meaning and effect aforesaid, is in violation of those clauses of the Fourteenth Amendment to the Constitution of the United States, which provide that "no State shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States, nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." ' "

The Circuit Court of Appeals desires instruction upon the following:

### Questions.

"1. Does the amended bill of complaint disclose that any contract obligations between complainants and the defendant Mutual Reserve Fund Life Association were impaired by the incorporation of the Mutual Reserve Life Insurance Company in 1902, pursuant to the provisions of Chapter 722, Laws 1901, of the State of New York, and the transfer to said company of the assets, properties and membership of the Mutual Reserve Fund Life Association?

"2. Does the amended bill of complaint disclose and show that Chapter 722, Laws of 1901, of the State of New York, was

in violation of Article I, section 10, of the Constitution of the United States, as impairing the obligations of a contract between the defendant Mutual Reserve Fund Life Association and complainants, in so far as it authorized the reincorporation of said association as the Mutual Reserve Life Insurance Company?

"3. Does the amended bill of complaint disclose that Chapter 722, Laws of 1901, of the State of New York, is in violation of the provisions of Article XIV of the Amendments to the Constitution of the United States, in this, that the reincorporation of the Mutual Reserve Fund Life Association as the Mutual Reserve Life Insurance Company, and the changes in the charter powers and franchises of the corporation have the effect of depriving complainants of their property without due process of law, and of their vested contract rights and privileges and of their property rights under their contracts and agreements with respondent association?

"4. Does the amended bill of complaint disclose that Chapter 722, Laws of 1901, of the State of New York, was in violation of those provisions of Article XIV of the Amendments to the Constitution of the United States, which provide that no State shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States, nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws?"

*Mr. William Hepburn Russell*, with whom *Mr. D..L. Snodgrass, Mr. R. F. Jackson, Mr. William Beverly Winslow, Mr. Caruthers Ewing* and *Mr. Daniel M. Miers* were on the brief, for Polk *et al.*:

The organization of the insurance company by action of the directors and officers of the Mutual Reserve Fund Association, acting without the knowledge or consent of the members and policyholders of the latter, when it was insolvent, and under a law the passage of which they procured in fraud of such mem-

bers and policyholders, had the effect of depriving the complainants and other members and policyholders of their property without due process of law, of impairing the obligation of their contracts of membership and of denying to them the equal protection of the laws. *Huber* v. *Martin*, 127 Wisconsin, 412; *S. C.*, 115 Am. St. Rep. 1023; *Zabriskie* v. *Hackensack &c. R. Co.*, 18 N. J. Eq. 174; *Railway Co.* v. *Allerton*, 18 Wall. 233; *Baker's Appeal*, 109 Pa. St. 461; *Hartford & New Haven R. Co.* v. *Croswell*, 5 Hill (N. Y.), 383, 386; *Schwarzwaelder* v. *German Mut. Fire Ins. Co.*, 59 N. J. Eq. 589; *People* v. *Ballard*, 134 N. Y. 269, 294; 1 Morawetz on Corp. (2d ed.), §§ 295, 395, 404, 512.

*Wright* v. *Minnesota Mutual Life Insurance Co.*, 193 U. S. 657, is a controlling authority against the right of the directors of the Mutual Reserve Fund Life Association to (*a*), procure legislation authorizing a mutual life insurance society, organized upon the assessment plan, to change to a level premium, old line company upon the application of the directors alone; and (*b*), to make the change under such law, without the knowledge or consent of the members, at a time when the association was already insolvent.

Directors of a mutual membership corporation have no power without the authority and consent of the members, to alter, amend and change the corporate charter either by their own acts, or pursuant to legislation, procured upon their initiative, for such purpose. *Marlborough Mfg. Co.* v. *Smith*, 2 Connecticut, 579, 583, 584; 1 Morawetz on Corp. (2d ed.), §§ 295, 297, 395, 397, 512–514; *Railway Co.* v. *Allerton*, 18 Wall. 233; *Baker's Appeal*, 109 Pa. St. 461; *So. Pennsylvania Iron & R. Co.* v. *Stevens*, 87 Pa. St. 190, 196; *Edwards* v. *Mercantile Trust Co.*, 124 Fed. Rep. 382, 392. Nor does the reserved power of the legislature to "amend, alter or repeal" authorize those directors to procure general legislation under which they can apply for and obtain such a reincorporation of the company without the knowledge and consent of its members. Taylor on Corporations (5th ed.), §§ 499, 500; *Railway Co.* v. *Allerton*,

18 Wall. 233, 235, 236; *Baker's Appeal*, 109 Pa. St. 461, 471, 472; *Zabriskie* v. *Hackensack &c. R. Co.*, 18 N. J. Eq. 178; *Botts* v. *Simpsonville &c. Co.*, 88 Kentucky, 54; *Huber* v. *Martin*, 115 Am. St. Rep. 1023; *Black* v. *Delaware &c. Canal Co.*, 24 N. J. Eq. 455, 466; *Mills* v. *Central R. Co.*, 41 N. J. Eq. 1.

Chapter 722, Laws of New York of 1901, is unconstitutional and void and the pretended reincorporation of the Mutual Reserve Fund Life Association under its provisions is invalid, because it impairs the obligation of contracts between a mutual coöperative assessment life insurance society and its members by conferring power upon the directors of the corporation, without the action, knowledge or consent of the members, to change the corporation into an insurance company of a different class, with different burdens resting upon it and through it upon its members. 3 Thompson on Corp., §§ 3979, 3980; *Railway Co.* v. *Allerton*, 18 Wall. 233; *Baker's Appeal*, 109 Pa. St 461; *Marlborough Mfg. Co.* v. *Smith*, 2 Connecticut, 579, 583, 584; *Venner* v. *Atchison, Topeka & Santa Fe R. Co.*, 28 Fed. Rep. 581, per Brewer, C. J.; *Mayor &c.* v. *Knoxville & O. R. Co.*, 22 Fed. Rep. 758, per Baxter, C. J.

The change made in the nature and business of the Mutual Reserve Fund Life Association by its pretended reincorporation as the Mutual Reserve Life Insurance Company, whereby it was transformed from an assessment company to an old line, level premium company, its policies "valued" and a "legal reserve" created, was fundamental, and no power of amendment by the directors being reserved in its charter, the pretended reincorporation under Chap. 722 by the action of the directors alone, is unconstitutional and invalid and has the effect of impairing the obligation of contracts with its members and depriving them of their property without due process of law. *Bedford* v. *Eastern B. & L. Ass'n*, 181 U. S. 227, 240–241; Chap 175, Laws of N. Y. of 1883, § 16; Chap. 690, Laws of N. Y. of 1892, § 209; Chap. 690, Laws of N. Y. of 1893, §§ 1 and 2; *Lord* v. *Equitable Assurance Soc.*, 109 App. Div. N. Y. 252.

. *Mr. Frank H. Platt,* with whom *Mr. Sewell T. Tyng* was on the brief, for the insurance company:

The record negatives the fact, apparently assumed in. the first question certified, that the Mutual Reserve Life Insurance Company is. a separate and distinct corporation to which the assets of the Mutual Reserve Fund Life Association have been transferred.

The amendment of the charter in April, 1902, was duly and regularly effected pursuant to Chap. 722, Laws of 1901. The consent of policyholders or members to the amendment was not required by that statute.,

The record does not disclose that any contract obligations or property rights of the appellants have been impaired or affected by the amendment of the corporation's charter.. No change was made or attempted in the outstanding contracts or policies.

Chapter 722 of the Laws of 1901 of the State of New York, under which the defendant amended its charter, does not violate the contract or due process provisions of the Federal Constitution. Appellants as policyholders of an assessment insurance company have no vested or contract right to insist that the business of the company shall always be conducted exclusively upon the assessment plan. *Wright* v. *Minnesota Mutual Life Insurance Company,* 193 U. S. 657, affirming *Iverson* v. *Minn. Mutual Life Ins. Co.,* 137 Fed. Rep. 268. See also *Miller* v. *State of New York,* 15 Wall. 478; *C. H. Jenner Co.* v. *U. S. Steel Corporation,* 116 Fed. Rep. 1012; *McKee* v. *Chautauqua Assembly,* 130 Fed. Rep. 536; *Grobe* v. *Ins. Co.,* 169 N. Y. 613.

MR. JUSTICE MOODY, after making the foregoing statement, delivered the opinion of the court.

The Mutual Reserve Fund Association of New York (hereinafter called the Association) was originally incorporated under Chap. 267 of the Laws of New York of 1875. The certificate

of incorporation stated the purposes of the Association to be to provide " benefits for families and others dependent   .   .   . by means of voluntary contributions   .   .   .   and to provide a fund for the common and exclusive benefit of all members." In 1883 the Association reincorporated under Chap. 175, Laws of 1883, and while this charter was in existence the complainants became members and policyholders. That law provided for the incorporation and regulation of. coöperative and assessment life and casualty insurance associations, and the charter of the Association stated the business to be conducted as. "the transaction of life insurance upon the coöperative or assessment plan." The law, as will presently be shown, was subject to alteration or repeal. In 1892 an act known as the Insurance Law (Chap. 38 of the General Laws, Laws 1892 p. 1930) was passed, repealing previous laws upon the subject of insurance, and expressed to be "applicable to all corporations authorized by law to make insurances." Section 52 of this act, as amended by Chap. 722 of the Laws of 1901, is as follows:

"SEC. 52. Reorganizations of existing corporations and amendment of certificates.—Any domestic corporation existing or doing business at the time this chapter takes effect, may, by a vote of a majority of its directors or trustees, accept provisions of this chapter and amend its charter to conform with the same, upon obtaining the consent of the Superintendent of Insurance thereto in writing; and thereafter it shall be deemed to have been incorporated under this chapter, and every such corporation in reincorporating under this provision may for that purpose so adopt in whole or in part a new charter, in conformity herewith, and include therein any or all provisions of its existing charter, and any or all changes from its existing charter, to cover and enjoy any or all the privileges and provisions of existing laws which might be so included and enjoyed if it were originally incorporated thereunder, and it shall, upon such adoption of and after obtaining the consent, as in this section before provided, to such charter, and filing the same and the record of adoption and consent in the office of the Super-

intendent of Insurance, perpetually enjoy the same as and be such corporation, and which is declared to be a continuation of such corporation which existed prior to such reincorporation; and the offices therein, which shall be continued shall be filled by the respective incumbents for the periods for which they were elected, and all others shall be filled in the same manner as by such amended charter provided. Every domestic insurance corporation may amend its charter or certificate of incorporation by inserting therein any statement or matter which might have been originally inserted therein; and the same proceedings shall be taken upon the presentation of such amended charter or certificate to the Superintendent of Insurance, as are required by this chapter to be taken with respect to an original charter or certificate, and if approved by the Superintendent of Insurance, and his certificate of authority to do business thereunder is granted, the corporation shall thereafter be deemed to possess the same powers and be subject to the same liabilities as if such amended charter or certificate had been its original charter or certificate of incorporation, but without prejudice to any pending action or proceeding or any rights previously accrued. This section shall apply to insurance corporations organized under or subject to article six of the insurance law as well as to insurance corporations organized under special charters or articles two and ten of the insurance law; all contracts, policies and certificates issued by such corporations prior to accepting the provisions of this chapter shall be valued as one year term insurance at the ages attained, excepting when such contracts, policies or certificates shall provide for a limited number of specified premiums or for specified surrender values, in which case they shall be valued as provided in article two, section eighty-four, of the insurance law."

Following strictly the provisions of this section, the Association accepted the provisions of the insurance law, amended its charter, and became entitled to all the privileges of the law as if it had been originally incorporated thereunder. In the amendments to the charter the name of the Association was

changed to "Mutual Reserve Life Insurance Company" (hereinafter called the Company), and the business of the Company was stated to be "insurance upon the lives or the health of persons, and all and every insurance appertaining thereto, the making of endowments, and the granting, purchasing and dispensing of annuities." The effect of this was to broaden the business from that of merely coöperative and assessment life insurance to life insurance of every kind. It is conceded that what was done was within the authority conferred by the statute, and the subject for our consideration is whether any of the rights, secured to the complainants by the Constitution of the United States, have been impaired.

The first question certified is, whether the incorporation of the Company and the transfer to it of the assets, property and membership of the Association impaired any contract obligations between the Association and the complainants. This question possibly implies that by the reincorporation an entirely new corporation was created, to which the property of the old corporation was transferred. But the question must be interpreted with the aid of the statement of facts which accompanies it. An examination of the facts and of the statute shows that there was simply a reorganization of an existing corporation and not the creation of a new one. The title of the section is, "Reorganizations of existing corporations and amendment of certificates." It authorizes an existing corporation by vote of its directors to accept the provisions of the chapter and amend its charter. It provides expressly that the corporation, with its added powers and revised charter, shall be a "continuation of such corporation which existed prior to such reincorporation." This, perhaps, makes superfluous the saving of "pending actions or proceeding or any rights previously accrued" which the section cautiously insures. The declaration filed by the directors, and certified by the Attorney General to be in conformity with law, recites that the Association "has duly accepted the provisions" of the insurance law, and "duly adopted the following amended charter." The corporation

was not changed to a stock, but continued as a mutual company. The change of name cannot control the significance of these facts. We answer this and the other questions upon the assumption, therefore, that the old corporation was still in existence, under a new name, and with added powers, but with unchanged membership, and bound to perform all its existing obligations. Upon this view it is impossible to say that any of the contract obligations of the Association to the complainants have been impaired by the reorganization. This was the view apparently accepted by the Company, who, in its notice to its members, said: "This reincorporation, while insuring the stability of the Company, makes no change in your policy." It is contended, however, that the last clause of the section, which is applicable to associations for insurance under the coöperative or assessment plan, affects the contracts of the old members, by converting them into one-year term insurances at the ages attained. But as we understand this clause it has no effect upon the contracts of insurance, but is designed for a totally different purpose. It simply prescribes a standard by which the liabilities on the assessment contracts must be appraised. The Superintendent of Insurance is charged with the duty of deciding whether the assets of insurance companies bear such a relation to their liabilities that it is safe to allow them to continue in business. A very large part of the liabilities of any insurance company is upon outstanding contracts of insurance, not due and therefore not capable of exact measurement. Such liabilities can only be estimated or "valued." Section 84 of the insurance law provides for the method of estimating or valuing the liability on ordinary life policies, but that method seems inapplicable to assessment policies. In any event, the legislature determined that, when an assessment company was allowed to engage in other kinds of life insurance, its outstanding policies should be appraised as liabilities as if they were "one-year term insurance at the ages attained." This does not make them such in fact, or authorize the Company, in its dealings with the policyholder, to

treat them as such.  The statutory appraisement of the policies for bookkeeping purposes no more affects the rights of the members under their contracts than the account of stock of a merchant would affect the rights of his creditors.  The first question must be answered in the negative.

The second question certified is, whether the law of 1901, so far as it authorized the reincorporation of the Association, was in violation of the clause of the Constitution forbidding a State from passing a law impairing the obligation of contracts.  A similar question was before the court in *Wright* v. *Minnesota Mutual Life Ins. Co.*, 193 U. S. 657, where it was held that a law of Minnesota, authorizing an assessment insurance company to change its business to that of insurance upon a regular premium basis, was not in violation of this provision of the Constitution.  The reasoning of the court in that case need not be repeated.  It is conclusive upon this question, unless the case at bar can be distinguished from it.  The complainants seek to distinguish the case in several respects, which must be noticed.  First, it is said that in the *Wright case* the power of amendment of the articles of association was reserved in the articles of association, while no such reservation exists here. But the constitution of New York, in force since 1846, contains this provision: "Corporations may be formed under general laws; but shall not be created by special act, except for municipal purposes, and in cases where, in the judgment of the legislature, the objects of the corporation cannot be attained under general laws.  *All general laws and special acts passed pursuant to this section may be altered from time to time or repealed.*"  A constitutional provision of the State of Michigan in substantially the same words was held to authorize important changes in the articles of association of an insurance company incorporated under a general law.  *Looker* v. *Maynard*, 179 U. S. 46. There it was said, page 52: "The effect of such a provision, whether contained in an original act of incorporation, or in a constitution or general law subject to which a charter is accepted is, at the least, to reserve to the legislature the power

to make any alteration or amendment of a charter subject to it, which will not defeat or substantially impair the object of the grant, or any right vested under the grant; and which the legislature may deem necessary to carry into effect the purpose of the grant, or to protect the rights of the public or of the corporation, its stockholders or creditors, or to promote the due administration of its affairs." This case shows that it is immaterial whether the power to alter the charter is reserved in the original act of incorporation, or in the articles of association under a general law, or in a constitution in force when the incorporation under a general law is made, as in the case at bar. Second, it is said that in the *Wright case* the change was made by the majority of the members of the association, while in the case at bar it was made by a majority of the directors without the consent of the members. But in each case the change was made in conformity with the provisions of the law authorizing it, and if the legislature has the constitutional power to authorize the change by the vote of a majority of the members it has the power to authorize the change by a vote of a majority of the directors. The rights of a protesting member are no more impaired in one case than in the other. Next, it is said that distinctions may be based upon the allegations in this case that the Association was insolvent, and that knowing this, its officers devised the scheme of reincorporation and procured legislation authorizing it, with the intent to defraud the members. That the corporation was solvent was emphasized by the court in the *Wright case*, but nothing in the decision of the constitutional question turned upon that. It would introduce a new uncertainty into the law if the constitutionality of statutes were to be judged by the motives and purposes of those who persuaded the legislature to enact them. We are unable to conceive of any possible bearing that these allegations, if accepted as true, could have on the constitutional questions certified to us, or to regard them as creating any real and substantial distinction between the case before us and the *Wright case*. On the authority of that case,

therefore, the second question must be answered in the negative.

The other two questions certified inquire whether the law under which the reincorporation was made, or the reincorporation and changes in power made under its provisions, are in violation of the Fourteenth Amendment to the Constitution of the United States. These questions do not require separate or detailed consideration. As applied to the facts of this case, they are practically dealt with in the discussion which has preceded. It is not suggested that any rights secured to the complainants by the Fourteenth Amendment were violated in any other manner than by the reincorporation of the Association without the consent of its members, the change in and addition to its powers, and the consequent effect upon the contract rights of the complainants and upon their relation to the corporation. But it has been shown that the contract rights of the complainant have not been affected by the reincorporation, and the same reasoning that leads to the conclusion that the changes in the charter powers, made under the reserved powers of the State, do not violate the contract clause of the Constitution are apt to show that they do not violate the Fourteenth Amendment. In fact, the only suggestion of a violation of the Fourteenth Amendment made to us is that the reincorporation, under the circumstances of this case, deprived the complainants of their vested rights and privileges and property rights under their contracts, without due process of law. Since the incorporation has deprived the complainants of no vested rights, privileges or property, the contention fails.

The whole argument of the complainants upon these constitutional questions, though enveloped in many words and presented in divers forms, rests upon a single proposition. That proposition is that they, having become members of an association insuring lives upon the coöperative and assessment plan, and being therefore, in a sense, both insurers and insured, have a vested right that the Association shall not, without their consent, engage in other kinds of insurance, which may and

probably will indirectly affect, for better or worse, their relations to it. The trouble with this proposition is that it was made and denied in the *Wright case*.

We have confined our consideration strictly to the constitutional questions certified. It may be that the complainants' rights under their contracts have not been observed by the Company or that they have otherwise been unlawfully injured. These questions are not before us.

*The questions are severally answered in the negative.*