BELDEN, APPELLEE, *v.* THE UNION CENTRAL LIFE INS. CO., APPELLANT.

KOPLIN, APPELLEE, *v.* THE OHIO NATIONAL LIFE INS. CO., APPELLANT.

(Nos. 3537 and 3548—Decided April 5, 1943.)

*Messrs. Schnee, Grimm & Belden* and *Messrs. Slabaugh, Seiberling, Guinther & Pfluejer,* for appellees.

*Messrs. Wise, Roetzel & Maxon, Messrs. Dinsmore, Shohl, Sawyer & Dinsmore, Mr. Stanley K. Henshaw* and *Mr. Virgil D. Parish,* for appellant The Union Central Life Insurance Company.

*Messrs. Buckingham, Doolittle & Thomas* and *Messrs. Bettinger, Schmitt & Kreis,* for appellant The Ohio National Life Insurance Company.

*Mr. Thomas J. Herbert,* attorney general, and *Mr. David M. Spriggs, amici curiae.*

SHERICK, J.   Both of these controversies are suits in equity, instituted by objecting policyholders, who seek to enjoin their respective insurers from convert-

ing themselves from domestic stock life insurance corporations into level premium mutual life insurance companies, all of which defendants now seek to do under the plans which they have adopted and the provisions of Sections 9364-1 to 9364-8 inclusive, General Code, which plaintiffs say are unconstitutional legislative acts and aid and abet in the accomplishment of unconstitutional plans.

The *Belden case* is appealed to this court on questions of law and fact. It is now being considered on demurrer to the answer. The *Koplin appeal* is upon a question of law. The trial court, as in the *Belden case*, sustained plaintiff's demurrer to defendant's answer. Neither company desired to plead further and final judgments were entered against them. The Ohio National Life Insurance Company contends that the court erred in its suit as a matter of law.

The pleadings in both suits evidence the same general plan of attack and defense. Their points of difference, wherein material, will be noted. Inasmuch as defendants' right to mutualize depends on the constitutionality of the statutes in the first instance, it is clear that the immediate question in each cause is identical. In recognition thereof the appeals are not consolidated but are jointly presented. We shall first comment upon the pleadings in the *Belden case*.

This pleading recites that in 1931, The Union Central Life Insurance Company insured plaintiff's life; that its policy stipulates he was entitled to participate in the profits as apportioned by the defendant's directors; and that his contract of insurance is in full force and effect. It avers that the company was incorporated under Ohio law in 1867; and that its capital stock of 5,000 shares, of the par value of $20 each, has from time to time been increased by declaration of stock dividends to $2,500,000. This was done by debiting sur-

plus and crediting capital. It is pleaded that the stockholders have received better than four and a quarter million of cash dividends, and that since 1916, the company's bylaws have limited stock dividends to five per cent semi-annually on nonparticipating and participating insurance, the latter not to exceed 1/20 of the company's assets or to provide a dividend in excess of six per cent per annum. It is said that the company is licensed to do business in nearly all states and has many policyholders therein.

It is next pleaded that the company directorate, in July 1941, adopted a plan of mutualization, which in part provided for the purchase of all shares of its stock at $25 per share; that thereafter in August 1941, the stockholders met and approved the plan; that notice was given of a policyholders' meeting to be held in October 1941, for the purpose of securing their majority approval of the plan; and that if a majority of the policyholders so approved, then the approval of the Superintendent of Insurance will be sought, which plaintiff believes has already been given. It is said that if a majority of policyholders approves of the plan the company's officers will proceed to purchase the company's stock which will require an expenditure of $3,125,000 in cash and other sums to defray expenses. These sums will be paid out of company's surplus.

Plaintiff next pleads that all this is attempted to be done under the provisions of the Code hereinbefore noted and known as the Mutualization Act, and that if these sections permit of the consummation of the proposed plan under the circumstances pleaded the act is unconstitutional because it is repugnant to Section 1 of Article II, and other clauses of the state Constitution, in that it delegates legislative powers and confers discretion upon the Superintendent of Insurance without establishing any standards for his guidance;

that the act transgresses upon the provision of Section 26, Article II, which provides that no act may be passed to take effect upon the approval of any other authority than the General Assembly; that the act is repugnant to Section 28, Article II, because it impairs the obligation of contracts; and that the same is true of Section 19, Article I, which provides that private property shall ever be held inviolate. It is said also to be repugnant to Section 10, Article I, of the federal Constitution in that it impairs the obligations of contracts; and that the same is true in respect to Section 1 of the Fourteenth Amendment in that it deprives one of his property without due process of law.

Plaintiff next avers that The Union Central Life Insurance Company's capital structure is composed of its original capital, policy reserves, policy proceeds and dividends left at interest, supplementary contracts, claims due, premiums paid in advance and dividends reserved for policyholders, and other reserves, which totaled upwards of $400,000,000 in 1940; and that the stockholders' investment has contributed but little to this sum as compared to the policyholders' investment to the capital and surplus account out of which it intends to pay the stock purchase price. Plaintiff says that he and other policyholders have a vested interest in the capital and surplus accounts, and if they are depleted by the planned stock purchase they are deprived of their property without due process of law, and that their contracts are impaired.

Although the petition is not so drawn it may rightfully be said that this matter comprises one of two causes of action. Without separate statement or reaffirmation, plaintiff pleads on in some thirteen subsequent paragraphs. We simply note that this latter portion complains, upon purely equitable grounds, that mutualization ought not to be permitted because of

inferred bad management and probable impairment of capital and surplus, and that reserves will be impaired if the stock is purchased as per plan. Fraud or insolvency is not charged or alleged.

The company, not to be outdone, has filed a voluminous answer, wherein it admits certain of plaintiff's averments, modifies others and states in reply thereto that all stock dividends have been made out of profits which had been allowed to accumulate throughout the years and passed into the surplus accounts. It states that those sums might have been paid out as cash dividends to stockholders. It states that its average cash dividends to stockholders from 1920 to 1940 is 5.18 per cent. During this period dividends to stockholders amounted to $2,718,750, as against dividends to policyholders of $136,606,720.

This defendant admits the approval of its plan of mutualization by its directorate and stockholders and says that the policyholders' meeting has been adjourned and as yet has not been held. It denies that the Superintendent of Insurance has approved of the plan, but admits that if a majority of the policyholders approve thereof, his approval will be sought and if obtained, it proposes to proceed to the plan's consummation. It states that it has in all things followed the direction of the Mutulization Act, which is in no way repugnant to the State or Federal Constitution.

It further states that as of December 31, 1940, its assets amounted to $413,679,712; that $398,884,078.64 is already allocated to the owners of policies in the form of reserves, in which the stockholders have no interest. It says that as of December 31, 1942, its total assets are nearly 456 million dollars. It next avers that its allocation of reserves represent sound accounting practices and conforms to insurance experience. It admits that reserves must be sufficient to meet the

claims which will arise, and then says that its reserves are sufficient and in accordance with sound insurance accounting practice.

From this point it proceeds by denial and averment of facts and figures to controvert plaintiff's claims of bad management and reserve impairment, if its capital stock is purchased in accordance with the plan of mutualization. If its version be true, it is a complete answer to plaintiff's equitable claims for the relief sought. We recognize that any such issue or issues are factual matters concerning business strategy, investment propriety, and accounting practices, with which plaintiff as a policyholder cannot be concerned, unless he and the class which he represents have a vested proprietary interest in the capital or surplus accounts which amount to some $14,700,000, or these accounts have been improperly accumulated with funds which should have been placed to reserve funds.

The petition in the *Koplin case* pursues the same general trend of the Belden pleading. It recites that The Ohio National Life Insurance Company insured his life in 1927. It is a nonparticipating policy which when and if fully executed may be exchanged for a paid-up policy which shall then participate ·in future surplus earnings in cash or accumulated paid-up insurance, or it may be surrendered at insured's then option.

It is then averred that defendant commenced business in 1910, with a capital stock of $100,000, with 10,000 shares of the par value of $10; that by 1940, its capital had been increased to $828,580; and that shareholders have received total cash dividends of $1,353,836.

Its plan of mutualization contemplates purchase and retirement of its shares at $40 per share, which will require an expenditure of $3,314,320 and expense sums

from capital and surplus accounts. Its board of direc-
tors and stockholders have approved of its plan   It is
claimed, like in the Belden petition, that the Mutualiza-
tion Act is unconstitutional.

The petition recites that defendant's capital struc-
ture at 1940 end had reached $55,000,000, of which
$47,662,906 are in reserve accounts built up for policy-
holders exclusively.   It is said that diversion of the
stock purchase sum from capital and surplus accounts
would not only wipe out these accounts but would also
cut into policy reserves to the extent of $1,000,000.

Koplin says that if the plan is pursued it will im-
pair his contract and take his property without due
process. It is not pleaded that defendant's mutualiza-
tion plan contemplates present stock purchase.   It re-
cites that "if the diversion which the defendant con-
templates at this time is allowed" the reserve account
will be impaired.   It is further pleaded that defend-
ant's shares are actually worth but twenty some dol-
lars.

This defendant's answer admits those things that
should be admitted.   It denies all others.   It avers two
additional affirmative facts.   It pleads that its plan
among other things authorizes its directorate "to pur-
chase from time to time as funds are available the
stock of its shareholders" at $40 per share.   It states
that since the filing of the petition herein, its policy-
holders have approved of the plan as provided by law.
(We here observe that its plan, as admitted by the de-
murrer, does not propose immediate total capital stock
purchase, but is to be acquired by purchase out of
capital and surplus accounts as and when such funds
are available.)

Plaintiffs rest their claim of the act's unconstitution-
ality upon three grounds, impairment of contract obli-
gations, deprivation of property without due process,

and improper delegation of legislative power  These are the points we shall particularly examine.

Section 9364-2*b,* General Code (its effective date being July 17, 1941), is first of importance.  It reads in part:

"Neither the retirement of its capital stock nor the amendment of its articles of incorporation, as herein provided, shall affect existing suits, rights or contracts of such corporation."

In the light of its terms and the established operative facts of the four pleadings which the demurrers search, it is clear that mutualization but continues the insurer's corporate existence.  It changes only the corporation's purposes.  New insurers are not created or injected into the insurance contracts.  The contracting parties remain the same.  It is neither permitted by the act nor proposed by the plan that "rights or contracts" are to be affected by mutualization.  That is to say, that so long as the insured pay their stipulated premiums, no more or no less, their contracts of insurance shall remain in full force without modification in any of their provisions.  Inasmuch as these observations are inescapable, true, it must follow that before plaintiffs' contracts can be impaired by mutualization under the act, it must be found that the insured are thereby deprived of some vested interest in the capital and surplus accounts or that portion thereof which is to be appropriated for the purchase and retirement of the capital stock. It must take from them some substantive part of the capital structure or some source of security which flows therefrom and to which they have an assertable right.  In addition thereto it must be such a taking as will lessen the value of their insurance contracts.

The first section of the act, Section 9364-1, General Code, after setting forth the four required steps necessary to secure mutualization, a failure of any one of

which will defeat the objective, concludes with this assurance to the policyholders and restraint upon the Superintendent of Insurance:

"Provided that every payment for the acquisition of any shares of the capital stock of such corporation, the purchase price of which is not fixed by such plan, shall be subject to the approval of the superintendent, and provided that neither such plan, nor any such payment, shall be approved by the superintendent unless at the time of such approvals, respectively, the corporation, after deducting the aggregate sum appropriated by such plan for the acquisition of any part or all of its capital stock, and in the case of any payment not fixed by such plan and subject to separate approval as aforesaid after the approval of such plan, after deducting also the amount of such payment, shall be possessed of assets sufficient to maintain its deposit theretofore made with the superintendent of insurance and not less than the entire liabilities of the corporation, including the net values of its outstanding contracts computed according to the standard adopted by the corporation under the provisions of Section 636 of the General Code of Ohio, and also all funds, contingent reserves and surplus save so much of the latter as shall have been appropriated or paid under such plan."

This quoted provision is of special significance in view of the several claims advanced by the plaintiffs for holding the act unconstitutional. It is urged that while the act takes care of the company stockholders, it fails to provide protection to those dissenting policyholders who object to the plan's adoption. Clearly this is not true. The Legislature has commanded, in Section 9364-1, General Code, that the Superintendent of Insurance shall in the first instance and at all times thereafter withhold his approval not only to the plan but to any subsequent disbursement of capital assets

towards its consummation, unless he shall first find that sufficient assets of the corporation remain and are available to meet all present and future demands upon it, and this of course includes that which is or may be due policyholders. Thus it is apparent that the superintendent is charged with mathematical duties. He must audit the corporation's books. He must value assets and determine liabilities. This could be done only on the basis of present actual cash values, except in those instances wherein the Legislature had previously prescribed how bonds or other evidences of debt shall be valued, as in Section 9363-1, General Code. No other standard of audit values could or would be fair and just. It is certain that the Legislature contemplated and intended from the language used that true values were the only standard of values possible. It was at the same time recognized that in computing liabilities, present policy values might be subject to various standards. To forestall all such disputes the General Assembly incorporated therein Section 636, General Code, first enacted in 1872 (see 69 Ohio Laws, 32, 36), and as finally amended in 1908 (see 99 Ohio Laws, 178), which annually causes computation and standardization of insurance policy values. We here point to the fact that when plaintiffs procured insurance, they then knew that it was the state's settled public policy that insurance contract values were at all times valuable by a fixed standard. This statute assured an insured of a definite surrender value at all times, which the insurer might not diminish. It also made possible the ascertainment and creation of adequate reserve accounts which at all times protected an insured's investment and life hazard insured against. True, surrender values never exceed premiums paid; why this should not be so is self-evident when protection against

the risk assumed over a period of time has been afforded.

Plaintiffs further knew when their contracts were entered into that Section 2, Article XIII of the state Constitution of 1851, as amended in 1912, provided that:

"Corporations may be formed under general laws; but all such laws may, from time to time, be altered or repealed."

That provision directly empowered the Legislature to enact the Mutualization Act which permits change of a stock life insurance corporation's charter by amendment. It permits alteration in insurance purpose. It permits change in organization and structure, so long as the obligations of existing contracts of insurance are not impaired. All this defendants may do if the four steps found in Section 9364-1, General Code, are susceptible of performance, provided Section 10, Article I of the federal Constitution, and Section 28, Article II of the state Constitution, which forbid a state from enacting laws which impair the obligation of contracts, are not transgressed.

Plaintiffs urge that inasmuch as their contracts antedate the Mutualization Act, its terms can only have prospective effect, and to hold such contracts amenable to the provisions of the act is to give the act retroactive effect, and thereby impair the obligation of their contracts and deprive them of due process of law. This is but to reiterate that defendants' capital structures must stand forever unchangeable until such time as every present participating policyholder's contract shall have ceased to exist. This claim can be made to stand upright only upon the theory of a policyholder's vested interest in the capital and surplus accounts. We cannot subscribe to this view. To our notion any such interest that policyholders have in these funds is

purely a contingent interest, which even then does not exist if reserves fully protect their contracts of insurance.

An analyzation of plaintiffs' claims sums up to this: That a participating policyholder, who is in fact a corporation creditor, by virtue of his contract of insurance, has a vested right to uninterrupted continuance of an insurer's capital structure. Defendants do not controvert this claim insofar as it concerns reserve accounts and required deposits thereover which must be maintained with the Superintendent of Insurance, but they do insist that beyond the requirements of these policy guaranties, policyholders have no vested interest in company surpluses.

It may be stated as indisputable propositions of general law that corporations organized for profit, as are these defendants, are not required to create surpluses. Neither are they required to maintain such. Their directors may declare dividends out of earnings undistributed, or earnings that have been passed to surplus account so long as it is done in good faith, that is to say, if it is not declared to the detriment of corporation creditors. It is also lawful for corporations to not only increase but to diminish their capital structure, subject to the same limitation. Particularly considering the matter of declaration of dividends from surplus accounts, it is observed that Section 9362, General Code, first enacted in 1872 (69 Ohio Laws 154), permits insurance corporations to make dividend payment to stockholders from surplus accounts after reserve requirements are met. This statute was in existence when plaintiffs procured their policies. They knew or must have known that surplus accounts in insurance companies organized for profit belonged to those stockholders whose capital was invested in the enterprise, subject of course to the limitation previous-

ly noted. Here again it is pertinent to observe that plaintiffs do not plead insolvency, but plead, in The Union Central Life Insurance Company case, that stock retirement out of surplus lessens that fund and impairs their security and takes without due process of law that in which they have a vested interest. In The Ohio National Life Insurance Company case they plead that reserve funds are to be used to consummate the plan. This the latter company denies, thereby creating a question of fact which requires evidence

If plaintiffs are correct in that they have a vested interest in surplus funds, then consistency dictates that they or their beneficiaries at maturity or death should be entitled to their aliquant part of that fund   This they do not claim. If they did so it is apparent from their pleaded rights under their contracts that they would then be attempting to do that which they now condemn, that is, impair the obligation of their contracts at the expense of the insurers. It is clear that plaintiffs' interests are fixed and determined by their contracts and the laws applicable thereto.

The parties agree that no case is reported within or without those jurisdictions which by similar statutes have permitted mutualization or other type of change in the business of insurance corporations wherein stock life insurance corporations have been converted into level premium mutuals. It is also said that cases of kindred nature are all sponsored by stockholders and none are to be found instituted by a policyholder. In these two respects only is the present question made unique. We believe that the law applicable requires but the applying of well-settled existing rules.

Plaintiffs knew or must have known not only of the provisions of Section 2, Article XIII, of the Ohio Constitution, but also of the statutes hereinbefore noted, which were in existence prior to their insurance con-

tract's execution. They contracted, knowing that laws existed inconsistent with their present claims. They knew that the state had reserved power to amend or repeal corporate charters, and that it might consent to subsequent change in corporate structure and plan of business, and even that management, ownership and control might be thereafter changed. It matters little how this power be reserved. It might be embodied in the articles of incorporation, or in the original act which afforded the vehicle for organization, or in the general law. Possessing the power to amend, it might do so, so long as its acts were not repugnant to the federal and state Constitutions.

It is equally certain that plaintiffs have not been deprived of due process of law under Article XIV of the Amendments. What the Legislature did in the enactment of the Mutualization Act, was done in conformity to the then existing law. Plaintiffs complain only that the plan and the Mutualization Act deny them due process, because they impair the obligation of their contracts, and deprive them of vested property rights. If what the Legislature did and the corporations pursued, insofar as we are now advised, was done in accordance with the law of Ohio and the federal Constitution, we are unable to perceive wherein plaintiffs have been harmed thereby. In truth, after mutualization, if the third and fourth hurdles are overcome, and over which the corporation stockholders and officers have no control, the policyholders gain management and control, if that be of advantage.

Has there been an improper delegation of legislative powers to the Superintendent of Insurance? We think not. The court in *Fassig* v. *State, ex rel. Turner, Atty. Genl.*, 95 Ohio St., 232, 116 N. E., 104, states the rule applicable, as we understand it:

"it may clothe administrative officers with power to ascertain whether certain specified facts exist, and

thereupon to act in a prescribed manner, without delegating to such officers legislative or judicial power within the meaning of the constitution.''

We have hereinbefore pointed out what the superintendent will be required to do when matters reach his hand. He must amass and compute figures and values, and see if reserves are adequate in accordance with existing law. In fact he must audit a company's accounts when it seeks mutualization approval If he finds from his computations that policyholders and other creditors are not harmed thereby, he shall approve of the plan provided it is not antagonistic to the state's insurance law. Surely the Legislature is incapable of performing any such service or laying out a plan in minute detail which would meet every mutualization that might thereafter be requested. As we see it his duties under the Act require him to ascertain whether ''specified facts exist, and thereupon to act in a prescribed manner.'' We do not find any improper delegation of legislative power or arbitrary discretion lodged in him. Neither can we perceive wherein the plan or the act is repugnant to the other constitutional provisions claimed to be violated thereby.

The rules of law which the court has applied will be found in the following authorities. They may be pursued with profit. *Wright* v. *Minnesota Mutual Life Ins. Co.,* 193 U. S., 657, 48 L. Ed., 832, 24 S. Ct., 549; *Polk* v. *Mutual Reserve Fund L. Assn.,* 207 U. S., 310, 52 L. Ed., 222, 28 S. Ct., 65; *Wall* v. *Bankers' Life Co. of Des Moines,* 208 Iowa, 1053, 223 N. W., 257; *In re Leininger,* 115 Neb., 801, 215 N. W., 167; and *Grobe* v. *Erie County Mutual Ins. Co.,* 24 Misc. Rep., 462, 53 N. Y. S., 628, affirmed by the appellate division, 39 App. Div., 183, 57 N. Y. S., 290, and again affirmed in 169 N. Y., 613, 62 N. E., 1096.

An order may be entered in the *Belden case* which overrules plaintiff's demurrer to defendant's answer.

Inasmuch as this court does not possess original jurisdiction in injunction matters, it is ordered that the cause be remanded for trial in the Court of Common Pleas. The judgment of the trial court in the *Koplin case* is reversed and the cause is remanded with instruction to overrule the plaintiff's demurrer to defendant's answer. In order that there be no misunderstanding, let it be understood the court considers that the demurrers search the plaintiffs' petitions and that portions of their causes of action which question the constitutionality of the Mutualization Act are elided from any further inquiry. It may be considered as finally disposed of in this review.

In order that the merits of the particular questions presented might be speedily determined, the court in its judgment has purposely refrained from considering The Union Central Life Insurance Company's claim that these suits were prematurely instituted.

*Demurrer overruled in cause No. 3548.*
*Judgment reversed in cause No. 3537.*

MONTGOMERY, P. J., and PUTNAM, J., concur.

MONTGOMERY, P. J., SHERICK and PUTNAM, JJ., of the Fifth Appellate District, sitting by designation in the Ninth Appellate District.