MONAGHAN, CHAIRMAN, MISSISSIPPI STATE TAX COMM. *v.* SOUTHERN BELL TELEPHONE AND TELEGRAPH CO.

No. 41989          January 8, 1962          136 So. 2d 198

*John E. Stone,* Jackson, for appellant.

*Butler, Snow, O'Mara, Stevens & Cannada, Atley A. Kitchings, Jr.,* Jackson; *John A. Boykin, Jr., Dan M. Byrd, Jr.,* Atlanta, Georgia, for appellee.

614

APPELLANT IN REPLY.

KYLE, J.

This case is before us on appeal by the Chairman of the State Tax Commission, defendant in the court below, from a decree of the Chancery Court of the First Judicial District of Hinds County rendered in favor of

the Southern Bell Telephone and Telegraph Company, complainant in the court below, for the recovery of the sum of $43,489.76, being the amount of additional sales taxes alleged to have been improperly assessed against the complainant under the provisions of the Mississippi Sales Tax Law, and paid by the complainant under protest.

The amount of the additional tax represents two per cent of the gross income of Southern Bell derived from sales of intrastate telephone services billed directly to and payment for which was made directly by the United States Government, the State of Mississippi, its departments and institutions, counties and municipalities, during the period covered, from April 1, 1955, through July 31, 1956, and also one-half of one per cent of the amounts received by Southern Bell from such sales in municipalities which had imposed a sales tax of one half of one per cent during the period covered. Southern Bell paid the additional tax under protest and filed suit in the Chancery Court of Hinds County to recover the amount paid, alleging that the company had been improperly charged with and required to pay the tax, since the applicable statute expressly provided that the sales tax levied and assessed under the Mississippi Sales Tax Law should not apply to sales of telephone services to governmental agencies of the type mentioned therein.

The pleadings in the record which we have before us consist of the bill of complaint filed by the Southern Bell Telephone and Telegraph Company as complainant, and the answer filed by the Chairman of the State Tax Commission as defendant. The facts are set forth in an agreed stipulation of facts signed by the attorneys for the respective parties, and in the averments of the bill which were admitted in the answer.

The applicable statutes involved in the suit for recovery of the tax are Chapter 377, Laws of 1954, effective June 1, 1954, amending Section 2-h of Chapter

119, Laws of 1934, and Chapter 109, Laws of Mississippi, Extraordinary Session of 1955, effective March 1, 1955, amending Sections 2, 2-d and 2-h, and Section 5 of said Chapter 119, Laws of 1934, being Sections 10105, 10109, 10113 (now Section 10116), and 10117, Mississippi Code of 1942, Recompiled.

The provisions of said Chapter 109, Laws of Extraordinary Session of 1955, amending said Sections 2, 2-d and 2-h, and Section 5 of said Chapter 119, Laws of 1934, are as follows:

''Section 7. That Section 2, Chapter 119, Laws of 1934, as amended, being Section 10105, Mississippi Code of 1942, be and the same is hereby amended to read as follows:

''Section 2. Tax Levied. There is hereby levied and assessed and shall be collected privilege taxes for the privilege of engaging or continuing in business or doing business within this state to be determined by the application of rates against gross proceeds of sales or gross income or values, as the case may be, as provided in the following sections.

'' * * *

''Section 10. That Section 2-d, Chapter 119, Laws of 1934, as amended, being Section 10109, Mississippi Code of 1942, as amended by Chapter 129, Laws of 1944, be and the same is amended to read as follows:

''Section 2-d. * * *

''Upon every person operating a telegraph or telephone business for the transmission of messages or conversations between points within this state, there is hereby levied, assessed and shall be collected a tax equal to three per cent (3%) of the gross income of such intrastate business * * *.

'' * * *

''Section 13. That Section 2-h, Chapter 119, Laws of 1934, as amended, being Section 10113, Mississippi Code of 1942, as amended by Chapter 128, Laws of 1944,

Chapter 129, Laws of 1944, Chapter 262, Laws of 1946, Chapter 388, Laws of 1946, and Chapter 377, Laws of 1954, is amended to read as follows:

"Section 2-h. Government Sales. The tax levied and assessed under this act shall not apply to sales of property, labor or services taxable under Sections 2-c, 2-d and 2-f of this act when such sales are billed directly to and payment therefor is made directly by the United States Government, the State of Mississippi, its departments and institutions, counties and municipalities * * *. " * * *

"Section 17. That Section 5 of Chapter 119, Laws of 1934, being Section 10117, Code of 1942, as amended * * * be amended to read as follows:

"Section 5. Seller to Collect Tax. Any person selling any tangible personal property or services who is liable for a privilege tax levied and assessed by Sections 2-c, 2-d and 2-f of this act shall add the amount of such tax due by him to the sales price of said personal property or services, and, in addition thereto, shall collect, insofar as practicable, the amount of the tax due by him from the purchaser at the time the sales price is collected. However, the provisions of this section shall not apply to charges for communication services taxable under Section 2-d, the rates for which were on January 1, 1952, subject to the jurisdiction of the Mississippi Public Service Commission, except to the extent the rates of tax imposed were not included as a part of the cost of furnishing services in fixing rates and charges * * *."

It should be noted that, by the enactment of Chapter 109, Laws of Extraordinary Session, 1955, the rate of the sales tax imposed by Sections 2-c, 2-d and 2-f of Chapter 119, Laws of 1934, was increased from two to three per cent. The rate increase of one per cent in the amount of the tax, however, does not enter into nor is it involved in any way in this litigation.

It should be noted also that, by the enactment of Section 13 of said Chapter 109, Laws of Extraordinary Session, 1955, the Legislature merely brought forward, with a minor change, the amendment to Section 2-h of the Sales Tax Law contained in Chapter 377, Laws of 1954, which became effective June 1, 1954.

The record shows that, under the provisions of the above mentioned statutes, during the period from April 1, 1955, through July 31, 1956, Southern Bell paid to the appellant a tax equal to three per cent of its gross income derived from its intrastate telephone business, less and except the proceeds received from sales billed directly to and payment for which was made directly by Federal and state governmental agencies; and that Southern Bell also paid to the appellant for the benefit of the municipalities which had imposed a sales tax for municipal purposes an amount equal to one-half of one per cent of its gross income derived from its intrastate telephone business within said municipalities, less and except the proceeds received from sales billed directly to and payment for which was made by the above mentioned governmental agencies.

It was stipulated and agreed that the rates charged by Southern Bell for intrastate services rendered its customers in the State of Mississippi have, since 1938, been subject to regulation by the Mississippi Public Service Commission under applicable statutes; and that, at all times pertinent to the issues involved in this suit, the intrastate rates and charges of Southern Bell were fixed by the Mississippi Public Service Commission under the so-called statewide rate-making method, which means that the Commission first determined the overall intrastate revenue requirements of the company, taking into account the operating expenses and taxes of the company, including a tax equal to two per cent of the gross income from its intrastate business, and then prescribed or approved a schedule of individual rates and

charges which would produce the amount of revenue required to meet the operating expenses and taxes of the company and provide a fair rate of return to the company upon the reasonable value of its intrastate property; that individual rates and charges were not fixed by the Commission on the basis of the cost to the company incident to furnishing the particular service to which such individual rates and charges related, but were fixed by the Commission so as to provide for the company the general revenue level approved by the Commission and thereby permit the company to recover all operating expenses, including taxes paid under Code Section 10109, supra.

It was further stipulated and agreed that the rates of Southern Bell have not been changed by the Public Service Commission with each change in the company's operating expenses or taxes; that from time to time there have been fluctuations in both expenses incurred and revenue received by the company, and these fluctuations may or may not have been such as to justify an increase or reduction in the general revenue level received by the Company; and as an illustration of such fluctuations or changes it was stipulated and agreed that under the provisions of Chapter 119, Laws of Extraordinary Session, 1955, effective April 1, 1955, the rate of the Mississippi income tax applicable to Southern Bell was increased so as to increase the company's state income tax in the amount of $43,660.01 for the calendar year 1955; and that under the provisions of Chapter 118, Laws of Extraordinary Session, 1955, the rate of the corporation franchise tax was increased so as to increase Southern Bell's franchise taxes for the calendar year 1955 in the amount of $28,317.00; and that the tax saving realized by Southern Bell in not including governmental billings in the gross income upon which it computed its 1955 tax liability under Code Section 10109, as amended, was $23,420.66.

It was further stipulated and agreed that, in presenting facts to the Public Service Commission to enable it to determine the general revenue level to be allowed, Southern Bell, in each instance since the enactment of the Sales Tax Law in 1932, and up until June 15, 1954, presented to the Commission as an expense item, along with all other expenses, such as salaries, wages, ad valorem taxes, franchise taxes etc., an amount equal to two per cent of the gross income of its intrastate business; and that the Public Service Commission in its rate hearings considered and accepted the two per cent tax as an expense item in determining and settling the general revenue level which the company was entitled to receive. It was further stipulated and agreed that, after the enactment of Chapter 377, Laws of 1954, effective June 1, 1954, amending Section 2-h of the Sales Tax Law so as to provide that the tax imposed under the Sales Tax Law should not apply to sales of property, labor or services taxable under Sections 2-c, 2-d and 2-f of said act when such sales were billed directly to and payment therefor was made by the Federal government and state agencies mentioned above, Southern Bell, relying upon the provisions of said Chapter 377, Laws of 1954, as amended by Chapter 109, Laws of Extraordinary Session, 1955, and beginning April 1, 1955, in computing the amount of sales taxes due under Section 10109, Code of 1942, as amended, excluded from the amount of its gross income from intrastate business all amounts billed directly to and payment for which was made directly by said Federal and state governmental agencies. It was further stipulated and agreed that no change was made in the rates charged such customers or subscribers, the rates of such customers and subscribers remaining the same as they were prior to the effective date of Chapter 377, Laws of 1954; that said rates remained unchanged during the period involved in this litigation; and that no action was taken by Southern Bell or the Public Serv-

ice Commission to effect any changes in the company's rates as a result of the enactment of said Chapter 377, Laws of 1954.

It was further stipulated and agreed that in the forms of billing statements used by Southern Bell for its subscribers prior to and during the period of time involved here no amounts for sales taxes were shown on the spaces designated for taxes in the statements submitted to the above mentioned governmental agencies; and in statements sent to subscribers other than the governmental agencies referred to the two per cent tax involved here was not included in the amount of the tax shown on the spaces designated for taxes.

It is the appellant's contention on this appeal that the Public Service Commission, in fixing the appellee's service charges and in arriving at the appellee's composite rate of return, took into consideration the two per cent sales tax which had been in effect since 1932, without deduction for governmental billings, and that, after the passage of Chapter 377, Laws of 1954, and Chapter 109, Laws of Extraordinary Session, 1955, the appellee should have refrained from collecting the two per cent on governmental billings, or if it desired to continue to collect the two per cent, it should have petitioned the Public Service Commission to increase its rates in an amount equal to two per cent of such governmental billings; that to permit the appellee to continue to bill the governmental agencies at the rates approved prior to the enactment of said Chapter 377 and retain the full amount collected, without accounting to the Commissioner for two per cent of the amount of such billings, would result in an unjust enrichment of the appellee. It is also argued that the appellee was not entitled to a refund of the tax, for the reason that the appellee failed to allege and prove, as required by Section 10121 (c), Code of 1942, Rec., that it alone bore the burden of the tax sued for

and did not directly or indirectly collect the tax from its customers.

In answer to the argument of the appellant's attorney in support of the contentions stated above, the appellee's attorneys say that the 1954 and 1955 amendments to Section 2-h of the Sales Tax Law, which were in effect during the period covered by the additional assessment, expressly provided that the tax levied and assessed under the act should not apply to sales of services taxable under Section 2-d of the act when such sales were billed directly to and payment thereof were made directly by Federal and state governmental agencies; that the tax imposed by said Section 2-d of said act was a privilege tax imposed upon the appellee for the privilege of doing business within the state; and that at no time was the two per cent tax passed on, billed to or collected from any of its customers; that the economic burden of the tax was borne by the appellee alone; that the rate charged by the appellee for telephone service was a composite rate in which the two per cent sales tax was absorbed or buried; and that, in such case, the theory of unjust enrichment relied upon by the appellant is not applicable in a case of this kind.

In short, it is the contention of the appellee that the two per cent tax here involved was never passed on to or collected from appellee's customers, but was borne by the appellee, along with all of its other operating expenses, including other taxes; that the tax was absorbed in the composite rates for telephone services approved by the Public Service Commission; and that the exclusion of sales to Federal and state governmental agencies from the measure of the tax, as provided in Chapter 377, Laws of 1954, and Chapter 109, Laws of Extraordinary Session, 1955, did not modify or affect the composite service rates approved by the Commission, which the appellee was entitled to collect.

We think there was no error in the action of the trial judge in awarding a judgment in favor of the appellee for the recovery of the amount sued for with interest. The complainant was required to pay the additional tax and paid the same under protest; and the appellee had a right to sue in the Chancery Court of Hinds County for the recovery of the amount paid. See Section 10121, Code of 1942, as amended by Chapter 106, Laws of Mississippi Extraordinary Session, 1955.

The tax imposed by Section 2-d of Chapter 109, Section 10109, Code of 1942, Rec., Laws of Extraordinary Session, 1955, was a privilege tax imposed upon the taxpayer for the privilege of doing business within the state. The amount of the tax was measured by the company's gross income derived from its intrastate business, excluding, however, the proceeds of sales to Federal and state governmental agencies. The law did not impose the tax upon the telephone subscribers, although in practice the amount of the tax was taken into consideration by the Public Service Commission as a part of the operating expenses of the company in determining the rates which the company should be permitted to charge for its services. The tax was not treated as a separate item to be added to the rate charges approved by the Commission. The tax was imposed upon the company furnishing the service and was "absorbed" or "buried" in the price which the company was authorized to charge for the service. The rates which were charged by the appellee during the period under review were rates which had been approved by the Public Service Commission and were to remain in effect until they were changed in the manner provided by law.

No cases have been cited in the briefs filed on behalf of the respective parties which deal directly with the question presented for our decision on this appeal. However, several cases have been cited in which the courts have had occasion to consider the affect upon the rights

of parties to a sales contract of changes with respect to tax matters occurring subsequent to the sale.

In 46 Am. Jur., 363, Sales, Sec. 183, the textwriter says: "It is generally held that where a tax is included as a part of the total or composite price agreed on, or, in other words, is "absorbed" or "buried" in the price, as distinguished from a case where it is added to the price as a separate item thereof, subsequent changes or developments with respect to the tax, as where it is subsequently repealed or declared invalid, do not entitle the buyer, as against the seller, to any credit or reimbursement for the amount of the tax."

In Golding Brothers Company, Inc., v. Dumaine (C. C. A. 1st Ct. 1937), 93 F. 2d 162, 115 A. L. R. 664, the Court said: "It seems to be well settled that, where a sales contract provides that the purchaser is to pay a stated price, and that alone, the purchaser cannot recover from the seller the amount of the tax, if the tax is later done away with by a repeal of the statute or by its being declared unconstitutional, or, if the tax is simply reduced, recover the amount of the reduction, even though the tax had not been paid by the vendor, or, if paid, refunded to him. Zinsmaster Baking Co. v. Commander Milling Co., Minn., 273 N. W. 673; Cupples Co., Mfrs., v. Mooney, Mo. App. 25 S. W. 2d 125; Moore v. Des. Arts. 1 N. Y. 359; Kastner v. Duffy-Mott Co., 125 Misc. 886, 213 N. Y. S. 128; Christopher v. Hoger & Co., Inc., 160 Misc. 21, 289 N. Y. S. 105; Texas Company v. Harold, 228 Ala. 350, 153 So. 442, 92 A. L. R. 523; Casey Jones, Inc., v. Texas Textile Mills, Inc., 5 Cir., 87 F. 2d 454; Heckman & Co. Inc., v. I. S. Dawes & Son Co., Inc., 56 App. D. C. 213, 12 F. 2d 154."

The theory of the rule denying the buyer the right to any credit or reimbursement in this class of cases seems to be that where the tax is "absorbed" or "buried" in the price it occupies the same category as any other item of expense, and that a change therein should be

looked upon as in the same light as any other change, such as a reduction in the cost of raw materials, affecting the ultimate cost to the seller of producing and selling the goods. See Anno. — Sale — Reduction or Abolition of Tax, 115 A. L. R., 667, 669, and cases cited.

In Mattingly et al. v. Smith Milling Co. (1938), 183 Miss. 505, 184 So. 635, the Court held that the buyers of flour were not entitled to recover from the seller the amount added to the purchase price by the seller to meet the processing tax imposed by the Agricultural Adjustment Act which had been declared unconstitutional, where the flour had been sold at a flat price per barrel and the tax had been indistinguishably incorporated into the total sales price. The Court in its opinion in that case said: "The record shows that all the flour was sold to appellants at a flat or total or composite stated price per barrel, not at a certain price per barrel, plus the processing tax of $1.38. In so far as the tax may have been taken into consideration at all in fixing the sales price, it was indistinguishably incorporated into, and absorbed along with, all the other items of cost or expense which went to make up the total sales price per barrel; and it is now thoroughly well settled that when the tax item or any other item has been indistinguishably intermingled or absorbed in a total or composite stated price to be paid on delivery of the purchased article, the buyer is without remedy, though the annulment of the tax may increase the profit of the seller."

In the case of Crerar Clinch Coal Co. v. Board of Education (1957), 13 Ill. App. 2d 208, 141 N. E. 2d 393, the Court held that where the plaintiff contracted to sell coal to the Board of Education at prices fixed in the contracts and a subsequent amendment to the Sales Tax Act eliminated the sales tax from gross receipts of sales to governmental bodies, the Board was not entitled to deduct the amount of the sales tax from the contract price, where the composite price to be paid for the coal

was stated in the contracts and the amount of the tax was not specified.

■■■ The tax in the case that we have here, as stated above, was a privilege tax imposed upon the appellee and measured by its gross receipts from service charges approved by the Public Service Commission. The tax was never added to the telephone subscribers' bills as a separate charge. The tax was treated by the Public Service Commission as a part of the cost to the company of furnishing services and in the fixing of rates and charges was intermingled with other operating expenses of the company and absorbed in the composite rates approved by the Commission. The telephone rates approved by the Public Service Commission and in effect during the period of time covered by the additional assessment in this case represented the composite price to be paid for telephone services furnished by the appellee to its customers until new rates were put into effect in the manner provided by the statutes. Whether changes should have been made in the rates immediately after the enactment of the new revenue laws of 1955 as a result of the changes made in the revenue laws is not a question for consideration by us on this appeal.

Prescribing the rules for computing the amount of the gross income tax to be paid by a person subject to such tax under the provisions of Section 2-d of the Sales Tax Law was a legislative function; and in our opinion the appellee in computing the amount of its tax due for the period under review, had a right to deduct from its gross income the amount of sales of services billed directly to and payments for which were made directly by the governmental agencies mentioned above. In making such deduction the appellee merely followed the provisions of the statute which provided that the tax should not apply to sales of services to such governmental agencies.

The record, in our opinion, clearly shows that the appellee alone bore the burden of the tax sought to be recovered, and we think there was no error in the chancellor's finding that the appellee was entitled to the relief prayed for.

We find no reversible error in the record and the decree of the lower court is therefore affirmed.

Affirmed.

*McGehee, C. J.,* and *Arrington, Ethridge* and *Gillespie, JJ.,* concur.