COLEMAN, Justice,
dissenting:
¶ 76. I dissent because, in my opinion, the majority’s holding ignores a directive *952 from the Legislature — which it has every right to enact and every right to'‘expect the courts of the state to follow — that mandates that the act creating the. Pat Harrison Waterway District be liberally construed to’'effect the purposes for which it was passed, including the preservation of the District. See 5K Farms, Inc. v. Miss. Dep’t of Revenue, 94 So.3d 221, 227 (¶ 21) (Miss.2012) (“[T]he courts are without the light to substitute their judgment for that of thé Legislature as to the wisdom and policy of the act and must enforce it, unless it appears beyond all reasonable doubt to violate the Constitution.”) (quoting Pathfinder Coach Div. of Superior Coach Corp. v. Cottrell, 216 Miss. 358, 362, 62 So.2d 383, 385 (1953)). As more fully discussed below, the Legislature directed in the clearest- possible terms that the creation of the Pat Harrison.Waterway District was “necessary and. essential ” to the general welfare of the entire state. Miss. Code Ann. § 51-15-101 (Rev.2003) (emphasis added).
¶ 77. When faced with such clear language from that branch of government whose prerogative is to set public policy for the state, I believe the Court should realize that the Legislature severely limited, if not rendered nonexistent, the Court’s power to interject its own opinion regarding what interpretation of the statute in question constitutes better public policy. Dialysis Solutions, LLC v. Miss. State Dep’t of Health, 96 So.3d 713, 716 (¶ 7) (Miss.2012); Miss. Const. art. 1, § 2 (no member or group of members of one branch of government may exercise powers belonging to another branch); see also Nat’l Fed’n of Indep. Bus. v. Sebelius, — U.S. —, 132 S.Ct. 2566, 183 L.Ed.2d 450 (2012) (Justices and judges “possess neither the expertise nor the prerogative to make policy judgments.”).
¶ 78. The majority’s opinion commits two fatal errors. First, the majority en-grafts upon the statute its own meaning by concluding that the meaning of “contractual obligations .’.. that are outstanding” is “contractual obligations ... owed as of the date of its withdrawal.” (Maj. Op. 51) (emphasis added). It then equates “owed” — and therefore the word outstanding — as an amount previously incurred, and not speculative. In essence, the majority concludes Lamar County is obligated to pay only on contractual obligations that it previously incurred; rather than obligations that are outstanding. In light of the Section 51-15-101 mandate regarding the necessity of the District and the manner in which the act must be interpreted, I question whether such a result can jibe with the' controlling statutes. It is certainly a result that lends ease to the departure of any county from the district and greatly increases the chance that the district would cease to exist due to withdrawal of all member counties.
¶ 79. Second, the majority declared Section 51-15-118 to be plain and unambiguous-having a clear and definite meaning. Therefore, they “need go no further,” yet they do. (Maj. Op. ¶48). When a statute is plain and unambiguous, the Court has stated that - “the Legislature shall be deemed to have intended to mean what they have plainly expressed, and, consequently, no room is left for construction in the . application . of such a law.” Conway v. Miss. State Bd. of Health, 252 Miss. 315, 173 So.2d 412, 415 (1965) (emphasis added) (citing Wilson v. Yazoo & M.V.R. Co., 192 Miss. 424, 6 So.2d 313 (1942)). Thus, the majority’s opinion need not ruminate at such length upon distinguishing our statute from a Texas statute, considering the subject matter of the statute (i.e., the contracts), and considering the purposes and objectives of the statute. The majority engages in a pseudo-statuto *953 ry interpretation, by picking and choosing the interpretations that allow it to reach its policy-driven conclusion.
¶ 80. I am of the opinion — and the majority’s pseudo-statutory interpretation inherently supports my opinion — that Section 51-15-118 is not plain and unambiguous. In determining whether a statute is ambiguous or unambiguous, the Court looks to the words of the statute. Miss. Dep’t of Revenue v. Miss. Power Co., 144 So.3d 155, 160 (Miss.2014). In the instant case, the parties disagree on the meaning of outstanding as used in the statute. The District contends outstanding refers to a party’s duties under the life of a contract. The duties may be duties performed in thé past, present, or future; and they may not always be easily quantified. Lamar County contends outstanding refers to a specific and known — albeit unpaid — amount of money under a contract. It states that the federal contracts do not “require the District to expend any specific monetary amount in maintaining and operating the properties.” It argues that “Lamar County has no obligation to pay speculative future operating costs of the District.” As a result, Lamar County’s definition of outstanding results in an easily quantified amount owed, which is consistent with the result below.
¶ 81. The majority fails to directly address the confusion over the correct interpretation of outstanding. It first states that “contractual obligations ... that are outstanding” means “contractual obligations owed as of the date of [a county’s] withdrawal” and does not apply, to “future maintenance and operational obligations.” (Maj. Op. ¶ 51-52). Thus, it concludes that future obligations are not contractual obligations. It then turns its analysis to the speculative nature of the future obligations. Even though it claims the statute is unambiguous, it goes so far as to distinguish the instant case from City of Pflugerville v. Capital Metropolitan Transportation Authority, 123 S.W.3d 106 (Tex.Ct.App.2003), by concluding that the District’s contracts provide “limitless discretion,” unlike the contracts at issue in Pflu-gerville. In essence, the majority adopts Lamar County’s, argument that the future obligations must be knowable at the time of departure from the district. However, the majority takes Lamar County’s argument a step further by concluding that the obligations imposed by the contracts constitute contractual duties that are rendered a legal nullity by the district’s discretion in fulfilling the duties.
¶ 82. Where a -statute garners three— or at least two-and-a-half — different possible interpretations, I think it an unprecedented leap to deem the , statute clear, plain, and unambiguous. I.would hold Section 51-15-118 to be ambiguous and subject .to thorough statutory interpretation.
The primary rule of construction is to ascertain the intent of the legislature from the statute as a whole and from the language used therein. Where the statute is plain and unambiguous there is no room for construction, but where it is ambiguous the court, in determining the legislative intent, .may look not only to the language used but also to.its historical background, its subject matter, and the purposes and objects to be accomplished.
Bailey v. Al-Mefty, 807 So.2d 1203, 1206 (Miss.2001) (quoting Clark v. State ex rel. Miss. State Med. Ass’n, 381 So.2d 1046, 1048 (Miss.1980)). Further, the Court has stated that “legislative intent must be determined from the total language of the act and not from one section thereof considered apart from the remainder.” Lee v. Alexander, 607 So.2d 30, 36 (Miss.1992) (citing Pearl River Valley Water Supply *954 Dist. et al. v. Hinds Cnty., et al., 445 So.2d 1330 (Miss.1984)); see also Capital One Servs., Inc. v. Page, 942 So.2d 760, 763 (Miss.2006) (“The polestar consideration for this Court is-legislative intent”).
¶ 83. Section 51-15-118 reads:
The withdrawing county shall be responsible for paying its portion of any district bonds,’contractual obligations, and any other indebtedness and liabilities of the district that are outstanding on the date of such county’s withdrawal from the district. The withdrawing county’s portion of such liabilities, obligations and indebtedness shall be determined through an independent audit conducted by a certified public accountant. The board of supervisors of the withdrawing county shall provide the sum that is required by this section either by appropriation from any available funds of the county or by levy. Such board of supervisors may borrow funds as needed to satisfy the withdrawing county’s portion of the liabilities, obligations and indebtedness of the district as required herein.
Miss.Code Ann. § 51-15-118 (Rev.2003). The statute as enacted provides that a withdrawing county must pay its contractual obligations “that are outstanding on the date of such county’s withdrawal.”[34] Id. Notably, the statute further allows the county to borrow from the state “to satisfy the withdrawing county’s portion of the liabilities,' obligations and indebtedness of the district.” Id.
¶ 84. Beyond Section 51-15-118, the Legislative schema on the District states that it was created and codified in 1962. Miss.Code Ann. § 51-15-101 (Rev.2003). The Legislature also stated the purpose of the District:
It is further determined and declared that the preservation, conservation, storage, and regulation.of the waters of the Pat Harrison Waterway District overflow waters for domestic, municipal, commercial, industrial, agricultural, and manufacturing purposes, for recreational uses, for flood control, timber development, irrigation, and pollution abatement are, as a matter of public policy, for the general welfare ’ of the entire people of the state.
The creation of the Pat Harrison Waterway District, is determined to be necessary and essential to the accomplishment of the aforesaid purposes, and this article operates on a subject in which the state at large is interested. All the terms and provisions of this article are to be liberally construed to effectuate the purposes herein set forth, this being a remedial law.
Miss.Code Ann. § 51-15-101 _ (emphasis added). Reading Section 51-15-118 in conjunction with Section 51-15-101 makes it clear that Section 51-15-118 should be liberally construed to preserve the District, which the Legislature labeled as “necessary and essential” to accomplish matters of public policy in furtherance of the general welfare. Miss.Code Ann. § 51-15-101, see also Tunica County v. Hampton Co. Nat’l Sur., LLC, 27 So.3d 1128, 1133 (Miss.2009) (“It is a general rule that in construing statutes this Court will not only' interpret the words used, but will consider the purpose and policy which the legislature had in view of enacting the law. The court will then give effect to the intent of the legislature.”). Rendering an opinion that' outstanding' refers only to contractual obligations that are “presently due and owing” does not construe the stat *955 ute to preserve the .necessary and essential district. Under the majority’s holding, Lamar County will not pay for contractual obligations that stem from eight contracts entered into by the District prior to September 6, 2011, but Lamar County will continue to reap some benefit from the contracts. To bolster my interpretation of the statute, I would point out that the contractual obligations at issue do not cease with Lamar County’s withdrawal. Rather, their yoke survives only to be shouldered by the remaining members of the'district. Should today’s result lead to a mass exodus, woe to . the- last county standing that would alone' bear the contractual obligations the majority holds do not exist. .
¶ 85. The majority’s rather nonchalant response to my concerns appears in two parts. First, the majority points out that some of the contractual obligations at issue can be changed by the district or are ill-defined. In other words, while they exist at the time of the county’s withdrawal, they cannot be said to be outstanding because they might change. Second, the majority writes that if all counties withdraw, any remaining contractual obligations (that the majority .holds today do not exist) simply fall back into the lap of the State of Mississippi. In other words, despite the clear legislative directive that we should interpret the act creating the Waterway liberally with the goal of effectuating its purposes and clear legislative language establishing that, as a matter of public policy, the Pat Harrison Waterway District is necessary and essential, when pressed, the majority writes that the demise of the district is, in so many words, no big deal.
¶ 86. The majority has thoroughly summarized the eight- contracts at issue under Section 51-15-118. (Maj. Op. ¶¶ 4-12) However, examining the contracts does not provide much aid. in determining whether the contracts constitute outstanding contractual obligations. It is undisputed that the District has perpetual contractual duties under seven of the eight contracts. The dispute lies in whether or not the contractual duties must be presently due, specific, and owing to be considered outstanding,
¶ 87. Turning to case, law, to garner a definition of outstanding, the United States Supreme Court has stated that outstanding contracts may need to be valued, if they have no specific monetary amount. Polk v. Mut. Reserve Fund Life Ass’n of New York, 207 U.S. 310, 324, 28 S.Ct. 65, 52 L.Ed. 222 (1907) (“A very large part of the liabilities of any insurance company is upon outstanding contracts of insurance, not due and therefore, not capable of exact measurement. Such liabilities can only be estimated or ‘valued.’ ”).' While Polk deals with the issue of insurance and not federal contracts, the Supreme Court’s determination in Polk makes it clear that something need not be due nor capable of exact measurement to be Considered outstanding.[35] Thus, Polk is at-odds with the majority’s bold assertion that obligations which are “future costs [that] have not been incurred and ... [are] highly speculative” are not outstanding contractual obligations.
¶ 88. The District Was created to ensure the general welfare of the entire state *956 by controlling and preserving the surface waters of the state. The Legislature made certain we aré to interpret the statutes to preserve the district. Miss.Code. Ann. § 51-15-101. Given the liberal interpretation afforded us by the Legislature and the Supreme Court’s statement in Polk that outstanding: is not required to mean capable of exact measurement nor due, I wholly disagree with the majority.
¶ 89. As "a final note, the majority states that defining the “contractual obligations that are outstanding” is “an accounting decision as required by the statute.” (Maj. Op. ¶58). It concedes that differing opinions were submitted to the fact-finder — on the meaning of the statute. However, it then wraps the meaning of the" statute neatly into the blanket of the expert opinions by concluding that the fact-finder’s role was to weigh the “credibility and evidentiary value” of the ' expert opinions. I respectfully disagree. The majority seemingly disregards the well established rule that statutory interpretation is a matter of laW. Noone v. Noone, 127 So.3d 193, 195 (Miss.2013). Thus, the role of the auditor is to determine the value of the contractual obligations that the court deems are outstanding contractual obligations.
¶ 90. The question of whether and to what extent, the Court humbles itself and chooses to abide by its role in the constitutional, three-branch framework of our state’s constitution when it considers matters of public policy — which, in the instant case, the Legislature has clearly decided for us — implicates the most fundamental and important principle of our chosen form of government., “Frequently an issue: of this sort-will come before the Court clad, so to speak, in sheep’s clothing: the potential of the asserted principle to effect, important change in the equilibrium of power is not immediately evident, and must be discerned by a careful and perceptive analysis.” Morrison v. Olson, 487 U.S. 654, 699, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988) (Scalia, J., dissenting). When venturing into the arena of public policy, I believe the Court must check its ego at the door and pay all deference to the Legislature’s pronouncements of it, and today I fear we fail to do so. Because the stakes include nothing less than the continued viability of an entity whose raisons d’etre the Legislature deems to be .necessary and essential to the people of Mississippi — not to mention millions of dollars, I echo Justice‘Sca-lia and note that, in the instant case, the wolf in question “comes as a wolf.” Morrison, 487 U.S. at 699, 108 S.Ct. 2597.
¶ 91. Accordingly, I respectfully dissent. ■
KITCHENS, CHANDLER-AND PIERCE, JJ., JOIN THIS OPINION.

. The majority concludes, and I agree, that Lamar County’s withdrawal date is September 6, 2011; however, withdrawal on September 6, 2011, is not complete until it pays $337,088. (Maj.. Op. ¶ 74),

. It is worth noting that holding outstanding to include contractual obligations not presently due nor capable of exact measurement does not foreclose a court from holding outstanding to refer to contractual obligations due or capable of exact measurement. See Meissner v. Paulson, 212 Cal.App.3d 785, 788, 260 Cal.Rptr. 826 (1989) (stating that an outstanding contractual obligation is the unpaid rent obligation); Broadway Nat’l Bank of Bayonne v. Parking Auth. of City of Bayonne, 40 N.J. 227, 191 A.2d 169, 171 (1963) (“[T]he Parking Authority had outstanding contractual obligations in the amount of $75,000.”).